UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

TOWN PLAZA OF POUGHQUAG, LLC and
TOWER INSURANCE COMPANY OF NEW
YORK,

        Plaintiffs,

 -against-

HARTFORD INSURANCE COMPANY,

        Defendant.

------------------------------------------------------------- x

12-CV-7823 (ALC)

**OPINION**
**& ORDER**

ANDREW L. CARTER, JR., District Judge:

In this insurance case, plaintiffs Town Plaza of Poughquag, LLC ("Town Plaza") and Tower Insurance Company of New York ("Tower") seek indemnification from Hartford Insurance Company ("Hartford") for the costs of defending and settling a personal injury action commenced by Richard Luders and Deborah Luders in the Supreme Court of the State of New York, Dutchess County. Before the Court are cross-motions for summary judgment submitted by the plaintiffs and the defendant.

## BACKGROUND

The Court has drawn the following facts from the parties' depositions and exhibits, and from the parties' respective Rule 56.1 Statements of Facts.[1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless

---

[1] Specifically, the Court has taken facts from the following: Plaintiffs' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. R. 56.1"), ECF No. 91; Defendant's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def. R. 56.1"), ECF No. 82, Plaintiffs' Counter Statement to Defendant's Statement of Material Facts ("Pl. Counter R. 56.1"), ECF No. 92, and Defendant's Counter Statement to Plaintiff's Statement of Material Facts ("Def. Counter R. 56.1"), ECF No. 95. In addition, supporting evidentiary materials were submitted as exhibits to the Declaration of Joanna Sandolo ("Sandolo Decl."), ECF No. 83 and the Declaration of Joshua L. Seltzer ("Seltzer Decl."), ECF No. 87. For documents cited in parties' Rule 56.1 Statements, the Court has cited to the respective statements of material facts instead of the specific documents in the record, when appropriate.

1

otherwise noted, all facts taken from a party's Statement of Material Facts are undisputed or the opposing party has pointed to no evidence in the record to contradict it.

Plaintiff Town Plaza owned a shopping center in Poughquag, New York. (Def. R. 56.1 ¶ 34) Town Centre leased a portion of this shopping center and conducted business under the name Beekman Pharmacy. (*Id.* ¶¶ 36-37.) Pursuant to the lease between Town Plaza and Town Centre, Beekman Pharmacy occupied a space that was to be expanded with a new addition constructed by the landlord, Town Plaza. (*Id.* ¶ 39.) Specifically, the lease defined the "Demised Premises" as:

> [A]pproximately 2700 square feet (the "Original Area") plus new construction of 2,500 square feet to be built in the spring of 2009 and completed with a final Certificate of Occupancy by September 30, 2009 (the "New Area"), to be ready for occupancy by Lessee on or about October 1, 2009. Upon completion, the Demised Premises will consist of approximately 5,200 square feet which will be the basis of rental and impositions . . . .

(*Id.*). The lease required Town Centre to maintain liability insurance protecting Town Plaza from all liability occurring in or about the demised premises, including "adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, or any appurtenances thereto," in an amount of at least $3 million per occurrence. (Pl. R. 56.1 ¶ 5.) Additionally, the lease required Town Centre to name Town Plaza as insured under a liability policy and required Town Centre to defend, indemnify, and hold harmless Town Plaza in respect to any liability that is "claimed to have occurred on or about the Demised Premises or any part thereof." (*Id.* ¶¶ 6-7.)

Defendant Hartford provided business liability coverage to Towne Centre, pursuant to an insurance policy bearing policy number 12 SBA BG9522, with effective dates from September 23, 2009 through September 23, 2010. (Def. R. 56.1 ¶ 36.) The policy also named Town Plaza as an additional insured. (*Id.* ¶ 42.) Specifically, the policy stated the following:

> F. Optional Additional Insured Coverages

> \* \* \*
>
> 2. Additional Insured – Manager Or Lessors of Premises
>
>> a. WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Designated Person Or Organization; but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises leased to you and shown in the Declarations.

(*Id.*). Moreover, this additional insured coverage excludes liability arising out of, among several conditions, new construction:

> b. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
>
> This insurance does not apply to:
> \* \* \*
> (2) Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

(*Id.* ¶ 43.)

The policy states that coverage for the additional insured "is primary if you [Town Centre] have agreed in a written contract, written agreement or permit that this insurance is primary." (Pl. R. 56.1 ¶ 13.) Plaintiff Tower issued a commercial lines policy to Town Plaza, effective May 13, 2009 to May 13, 2010, in connection with the premises. (*Id.* ¶ 14.) The Tower policy states that it is excess to "[a]ny other primary insurance available to you [Town Plaza] covering liability for damages out of the premises or operations for which you [Town Plaza] have been added as an additional insured by attachment of an endorsement." (*Id.* ¶ 16.)

On the evening of November 20, 2009, Richard Luders injured himself when he fell off the sidewalk ten to fifteen steps from the front entrance of Beekman Pharmacy. (Def. R. 56.1 ¶ 44; Seltzer Decl. Ex. D, Richard Luders Dep. Tr. at 7:16-20, 13:24-14:15.) Richard Luders had filled a prescription at the pharmacy and was walking away from the establishment when he fell.

(R. Luders Dep. Tr. at 8:22-24, 13:6-23.) He was walking on the sidewalk toward a common parking area when he tripped off the sidewalk curb. (Pl. R. 56.1 ¶ 20.) At the time, Luders was maneuvering around a pallet of construction materials obstructing the sidewalk. (*Id.* ¶ 21.) The injury took place on the sidewalk adjacent to the new addition. (R. Luders Dep. Tr. at 51:9-12.) This sidewalk was constructed along with the pharmacy extension and was previously a section of the parking lot. (Seltzer Decl. Ex. F, Arnold Papowitz Dep. Tr. at 20:18-20, Seltzer Decl. Ex. G, Gjafer Berisha Dep. Tr. at 14:2-18, 53:11-15.) In their depositions and affidavits, Richard and Deborah Luders stated that the sidewalk and area outside of the pharmacy were not illuminated even though the sun had already set. (R. Luders Dep. Tr. at 12:23-13:5, 14:4-7, 37:14-38:18; Seltzer Decl. Ex. H, Deborah Luders Dep. Tr. at 6:13-17.) Richard Luders had limited visibility in the dark and could not see the pallet until he attempted to veer to the left of it. (R. Luders Dep Tr. at 14:4-15.) In his attempt to maneuver around the pallet, Luders placed his right foot on the edge of the curb and fell as he lost his footing. (*Id.* at 17:4-7, 17:15-18:20.)

The lease required Town Centre, at its sole expense, to "furnish and install all lighting tubes, lamps, bulbs and ballasts" for the demised premises. (Pl. R. 56.1 ¶ 3.) Town Centre was also required to pay a proportionate share of expenses incurred in "owning, operating, maintaining and repairing common areas of the Property." (Def. Counter R. 56.1 ¶ 4.) Plaintiffs assert that Town Centre controls the lighting installed on the outside of the demised premises – the same lighting that illuminates the sidewalk area. (Pl. R. 56.1 ¶ 23.) Defendant disputes this and asserts that Town Centre controlled three lights in the soffit outside of the Demised Premises and that Town Plaza controls the lighting in the parking area. (Def. Counter R. 56.1 ¶ 23.)

Defendant states that the new area of the premises was not completed by September 30, 2009 and that a Certificate of Occupancy was not issued until December 23, 2009 – one full

4

month after Mr. Luders' alleged accident. (Def. R. 56.1 ¶ 40.) Plaintiffs dispute the date of completion, noting that the deposition testimony does elucidate whether Beekman Pharmacy occupied the new space before or after receiving a Certificate of Occupancy and does not point to any specific date when Town Plaza had finished constructing the new area. (Pl. Counter R. 56.1 ¶ 40.) Indeed, Gjafer Berisha, the owner of Town Plaza, testified that Town Plaza had ceased its construction in the new area by late October 2009 and had given the keys to the owner of the pharmacy in November 2009. (Berisha Dep. Tr. at 32:24-33:3, 35:24-36:8.) Moreover, the owner of the pharmacy, Arnold Papowitz testified that he hired contractors to install shelving, carpet, and additional lighting for the interior of the new area. (Papowitz Dep. Tr. at 32:22-36:18.) When asked, Papowitz could not recall when his contractors began their work. (*Id.*) He also noted that it was possible that he had observed his contractors leave materials outside of the new addition while completing their work. (*Id.* at 47:4-11.)

On March 21, 2011, the Luderses filed a complaint alleging that the sidewalk in front of the Beekman Pharmacy on the property known as Town Plaza was defective, dangerous, unsafe, and/or in need of repair. (Sandolo Decl. Ex. 3 ¶¶ 10, 19.) In their Bill of Particulars, they elaborated that the defects included an "[u]nlit sidewalk and parking lot," "a pallet/skid of construction material in the path where plaintiff walked," and "a curb height higher than the standard." (Sandolo Decl. Ex. 6 ¶ 4.) On November 16, 2010, Tower tendered Town Plaza's defense and indemnification to Hartford on the basis that Town Plaza was entitled to additional-insured coverage. (Pl. R. 56.1 ¶ 27.) On November 29, 2010, Hartford acknowledged receipt of the tender letter and stated it would need to investigate the accident. (*Id.* ¶ 28.) On July 18, 2011, Hartford notified Tower that it was denying Tower's tender because "indications are that this loss occurred in the common parking lot which was under [Town Plaza's] control."

(Sandolo Decl. Ex. 8.) Tower ultimately incurred more than $137,000 defending and indemnifying Town Plaza through the date the underlying dispute settled. (Pl. R. 56.1 ¶ 30.)

Plaintiffs initiated this action in New York County Supreme Court, and Hartford removed the action to this Court based on diversity jurisdiction. Plaintiffs seeks a declaration that Hartford must reimburse Tower for all amounts it incurred defending and indemnifying Town Plaza in the underlying action and that Town Plaza's coverage under Hartford's policy in this action is primary to the coverage provided by Tower's policy. They have filed a motion for summary judgment on these grounds. Hartford separately seeks summary judgment dismissing plaintiffs' claims on the theories that its coverage to Town Plaza is limited to liability arising out of the ownership, maintenance, or use of the "demised premises" and that the policy provided to Town Plaza specifically excludes structural alterations and new construction from coverage.

For the reasons set forth, defendant's motion is denied and plaintiffs' motion is granted in part and denied in part.

## DISCUSSION

1. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). "There is no issue of material fact where the facts are irrelevant to the disposition of the matter." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Id.* (citing *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins.*

*Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988)).

The burden lies with the moving party to demonstrate the absence of any genuine issue of material fact and all inferences and ambiguities are to be resolved in favor of the nonmoving party. *See Celotex Corp.* 477 U.S. at 323 (1986); *see also Hotel Emps. & Rest. Emps. Union, Local 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002). If "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). An identical standard applies where the parties file cross-motions for summary judgment: "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).

2. Duty to Defend

Under New York law, an insurer's duty to defend is "exceedingly broad, which is in the interest of the insured." *Colon v. Aetna Life & Casualty Ins. Co.*, 66 N.Y.2d 6, 8 (1985). An insurer must defend a claim whenever the complaint suggests a reasonable possibility of coverage, regardless of the merits of the action. *See Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991). Moreover, the duty to defend exists when, "notwithstanding the complaint allegations, underlying facts made known to the insurer create a reasonable possibility that the insured may be held liable for some act or omission covered by the policy." *Id.* at 70 (quotation marks and citations omitted). An insurer is only excused when it can show that, as a matter of law, "there is no possible factual or legal basis on which the insurer might eventually

7

be held to indemnify the insured." *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989).

The Luders' complaint does not identify the "dangerous condition" that allegedly caused the action, but the Verified Bill of Particulars does contain a list of defects. These defects include an "[u]nlit sidewalk and parking lot," "a pallet/skid of construction material in the path where plaintiff walked," and "a curb height higher than the standard." Hartford's additional insured policy extended to liability arising out of the ownership, maintenance, or use of the part of the premises leased to Town Centre.

It is clear that the sidewalk is not part of the leased premises. However, plaintiffs suggest that the pallet of construction materials could have been left by contractors hired by the pharmacy, and the Luders testified that the poor lighting outside of the pharmacy played a major role in the accident. These circumstances suffice to give rise to Hartford's duty to defend all claims brought against Town Plaza in the Luders' action. *See Fitzpatrick*, 78 N.Y.2d at 67 (noting that insurer is required to provide defense whenever "it has actual knowledge of facts establishing a reasonable possibility of coverage"); *see also Si Jie Mei, Inc. v. Fire & Cas. Ins. Co. of Conn.*, No. 03 CIV. 0196 (LLS), 2003 WL 22208376, at *2 (S.D.N.Y. Sept. 23, 2003) (relying on deposition testimony to find that insurer had duty to defend accident that occurred outside leased premises); *Emp'rs Ins. v. Duplan Corp.*, 899 F. Supp. 1112, 1124 (S.D.N.Y. 1995) ("*Fitzpatrick* must be read to compel the consideration of extrinsic facts presented by an insured to show the possibility of coverage.").

Since the questions surrounding the pallet and lighting create a reasonable possibility that Town Centre is liable for acts covered by the policy, Hartford had a duty to defend its additional

insured. For this reason, the Court grants this portion of plaintiffs' motion for summary judgment.

3. Duty to Indemnify

Under New York law, an insurer's duty to indemnify is narrower and distinct from the duty to defend. *See Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). Unlike a duty to defend, a duty to indemnify cannot be triggered by the mere possibility of coverage; rather, it is triggered by an independent factual finding that the insured's liability is within the coverage provided by the policy. *See Servidone Const. Const Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 424 (1985); *see also K2 Inv. Grp., LLC v. Am. Guar. & Liab. Ins. Co.*, 22 N.Y.3d 578, 586 (2014) (reaffirming that an insurer's breach of its duty to defend does not preclude that insurer from arguing that underlying incident was excluded by policy or otherwise outside of its coverage as a defense for indemnification). Courts considering whether an insurer has a duty to indemnify on actions for declaratory relief generally decline to rule on the issue of indemnity until liability is determined in the underlying personal injury action. *See Landpen Co., L.P. v. Maryland Cas. Co.*, No. 03 CIV. 3624RJHHBP, 2005 WL 356809, at *9 (S.D.N.Y. Feb. 15, 2005) (collecting cases).

The underlying case was resolved through a settlement, and the Supreme Court of the State of New York, Duchess County did not make any determination of liability. Thus, in the present case, summary judgment on the question of indemnification is appropriate only if the record contains no genuine issue of material fact related to whether liability was covered by the policy. *See* Fed. R. Civ. P. 56(c); *Park Place Entm't Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 413 (S.D.N.Y. 2002) (noting that summary judgment is inappropriate in suit where the

existence and/or extent of the insurers' liability raised questions of fact). Upon review of the record, this Court finds that genuine issues of material fact exist as to whether the accident is covered by Hartford's policy. Additionally, the Court finds that the portion of the sidewalk where the accident occurred does not require a finding that the accident arose from the use of the leased premises.

Defendant's argument for summary judgment is twofold: first, the accident occurred within a new area of the property that was not within the demised premises, and second, the accident was caused solely by Town Plaza's construction, an activity that falls within the policy's exclusion. Plaintiffs' theory is largely to the contrary. They argue that they are entitled to summary judgment on their claim for indemnity because there is no dispute Richard Luders injured himself on a portion of sidewalk incidental to the use of the pharmacy.

Plaintiffs present evidence that sufficiently raises an issue of fact as to whether Town Plaza's construction was the sole cause of Richard Luders' accident. Notably, the evidence, when construed against the defendant, supports findings that poor lighting contributed to the accident and that Town Centre was responsible for controlling the lights. Additionally, the evidence supports a finding that the materials were left by contractors hired by the pharmacy. While Town Plaza was responsible for the construction of the property extension, Town Centre also hired contractors to install shelving fixtures, carpet, and additional lighting within the new area. The owner of Town Plaza testified that Town Plaza had completed its portion of the construction by late October 2009 and had given the keys to the owner of the pharmacy in November 2009. Meanwhile, the pharmacy's owner testified that he could not recall when his contractors started the work on the interior of the new section. The pharmacy's owner also testified that it was possible that he had observed the contractors leave materials outside of the

new addition while they had done their work. For these reasons, defendant's motion for summary judgment is denied.[2]

Plaintiffs' theory for summary judgment hinges on whether the location of the accident sufficiently establishes that Luders' activity arose from the use of the pharmacy. In other words, parties disagree as to whether the accident would arise from Town Centre's operations if the pallet of materials and lighting did not contribute to the accident. Plaintiffs cite a line of cases stemming from *ZKZ Associates v. CNA Insurance Co.*, 637 N.Y.S.2d 117 (N.Y. App. Div. 1996), to support the position that, when injured, the Luders were engaged in an activity incidental to the use of the demised premises even though the injury occurred outside the demised premises. To rebut this, defendant primarily relies on *Christ the King Regional High School v. Zurich Insurance Co. of North America*, 937 N.Y.S.2d 290 (N.Y. App. Div. 2012), to argue that the accident in the underlying action cannot arise out of the use of the demised premises since Town Centre did not cause the injury and merely furnished the occasion for it.

In *ZKZ Associates*, the plaintiff building owner was covered as an additional insured only for liability arising out of the ownership, maintenance, and use of that part of the described premises which was leased to the tenant garage. 637 N.Y.S.2d at 118. An accident occurred on the sidewalk abutting the garage. *Id*. The plaintiff then sought a declaration that the tenant's insurer, CNA Insurance Co., had a duty to defend the plaintiff in the action. *Id*. The Appellate Division for the First Department reversed the lower court' decision and ruled in favor of

---

[2] There is no need to address defendant's other theory because summary judgment is precluded by issues of material fact related to causation. The outcome may be inconsequential because it is unclear when additional insured coverage was triggered for incidents occurring on the sidewalk adjacent to the new addition. While defendant argues that the Certificate of Occupancy was issued in December, testimony suggests that Town Centre obtained control of the new area as early as November 2009. Under New York law, "liability for a dangerous condition on property is predicated upon ownership, occupancy, control or a special use of the property" with "the determinative issue being one of *possession and control*." *Beck v. Consolidated Rail Corp.*, 394 F. Supp. 2d 632, 636 (S.D.N.Y. 2005) (emphasis in original) (citations omitted).

plaintiff. In reaching this decision, the Appellate Division emphasized that the special use of the sidewalk for letting cars enter the garage was an "inextricable, indivisible part of the use of the garage" and that any liability arising from that use clearly comes within the additional insured's coverage.[3] *Id.*

*ZKZ Associates* has been applied by courts to hold that the insurers of lessees have a duty to defend and indemnify lessors for injuries occurring on sidewalks and areas outside of demised leases. *See Ambrosio v. Newburgh Enlarged Sch. Dist.*, 774 N.Y.S.2d 153 (N.Y. App. Div. 2004); *New York Convention Operating Corp. v. Cerullo World Evangelism,* 704 N.Y.S.2d 211 (N.Y. App. Div. 2000); *see also Maldonado v. Kissm Realty Corp.*, 796 N.Y.S.2d 619 (N.Y. App. Div. 2005). In these cases, the courts have emphasized that injuries occurring in areas outside the leased premises arise out of the use of premises if the site of the accident is "necessary or incidental to the use."

In *Christ the King*, the plaintiffs leased a school auditorium and three classrooms to All American, an event organizer, for two days for a dance competition. 937 N.Y.S.2d at 806. A woman injured herself while walking from the parking lot behind the school to the school's front entrance in order to attend the competition. *Id.* at 806-07. Plaintiffs sued All American's insurer seeking additional insured coverage. *Id.* at 807. In ruling for the defendant insurer, the Appellate Division for the Second Department noted that this injury did not "arise out of [All American's] operations." *Id.* at 809. Unlike the *ZKZ* line of cases, this court held that All American's operations only provided the occasion for the underlying accident and that "bodily injury occurring outside the leased premises . . . was not a bargained-for risk." *Id.* (quotation marks and citation omitted).

---

[3] Significantly, the Appellate Division construed the CNA policy against the insurer because the liability policy referenced a lease even though the landlord and tenant were solely bound by a management contract. *Id.*

12

In the present case, the mere fact that Richard Luders was walking out of Town Centre and on a sidewalk leading away from the store is not sufficient to find that the injury arose out of the maintenance, use, or operation of the pharmacy. In the cases cited by plaintiffs, the site of the injury was inherently necessary for use in accordance with the license, lease, or other agreement. *Maldonado*, 18 A.D.3d at 619 (noting that lease acknowledged that lessee had exclusive use of two rooftop HVAC units and permitted access to the roof, where injury occurred, in order to conduct maintenance on HVAC units); *Cerullo*, 704 N.Y.S.2d at 276-77 (noting that "[a] person coming to attend [the] conference had to go through an entranceway to the Jacob Javits Center in order to reach the conference" where injury occurred in entranceway outside of licensed space); *Ambrosio*, 774 N.Y.S.2d at 153 (noting that accident occurred on sidewalk connecting leased fields to the school housing leased rooms); *ZKS Assoc.*, 637 N.Y.S.2d at 176 ("[W]ithout traversing the sidewalk for access to and from the garage, there could be no use at all of the garage as a parking facility."). These details suggest that the licensees and lessees were capable of anticipating liability from the sites of injury and were able to bargain for this risk in accordance with the principle underpinning *Christ the King*. Here, the sidewalk where Luders was injured was not necessary for entering the pharmacy.[4] Moreover, this portion of the sidewalk was formerly part of the Town Plaza-owned parking lot and was constructed only shortly before the accident. These details further undermine any contention that

---

[4] Plaintiffs argue that the specific location of the accident is irrelevant to the analysis. They rely on *Leading Insurance Group Insurance Co. v. Greenwich Insurance Co.*, 984 N.Y.S.2d 854 (N.Y. Sup. Ct. 2014), to support this argument. This case is readily distinguishable by the fact that the sidewalk in the present case was newly constructed, whereas the sidewalk in *Greenwich* existed at the time the tenant bargained his risk. Moreover, the holding of *Greenwich* was called into question by *Leading Insurance Group Insurance Co. v. Argonaut Great Central Insurance Co.*, 16 N.Y.S.3d 792, 792 n.1 (N.Y. Sup. Ct. 2015). There, the Supreme Court of the State of New York, Westchester County found that the court in *Greenwich* conflated the standard of *ZKZ Associates* with *Antoine v. City of New York*, 868 N.Y.S.2d 688 (N.Y. App. Div. 2008). This Court agrees with *Argonaut* and notes that *Greenwich* unnecessarily broadened the holding of *ZKS Associates*.

this area of the sidewalk was a bargained-for-risk at the time Town Plaza controlled the extension.

For these reasons, the Court denies plaintiffs' motion for summary judgment as it relates to the duty to indemnify.

4. Primary Insurer

As a final matter, the Court turns its attention to whether Town Plaza's coverage under the Harford insurance policy is primary to Town Plaza's coverage under the liability policy issued by Tower. Town Centre's lease with Town Plaza required Town Centre to maintain liability insurance protecting Town Plaza and name Town Plaza as insured. Hartford's policy states that coverage for the additional insured is primary if Town Centre has "agreed in a written contract, written agreement or permit that this insurance is primary." Tower's policy states that it is excess to any other primary insurance available to Town Plaza covering liability for damages out of the premises or operations for which Town Plaza has been added as an additional insured by attachment of an endorsement.

In *Pecker Iron Works of New York v. Traveler's Insurance Company*, the New York Court of Appeals examined a nearly identical additional insured endorsement to provide primary as opposed to excess coverage. 99 N.Y.2d 391, 393 (2003). There, the court concluded that coverage for the additional insured is considered primary unless "unambiguously stated otherwise" in writing, reasoning that the "well-understood meaning of the term [additional insured] is an entity enjoying the same protection as the named insured. Since the lease between Town Centre and Town Plaza does not indicate that the coverage is excess, *Pecker* controls here. Thus, Hartford owes Town Plaza primary coverage pursuant to the Additional Insured endorsement.

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for summary judgment is GRANTED with respect to defendant's duty to defend and DENIED as to defendant's duty to indemnify (ECF No. 85). Defendant's motion for summary judgment is DENIED (ECF No. 81). It is further declared that the Hartford policy is primary insurance, as compared to the Tower policy. The Clerk is respectfully directed to close these motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **March 31, 2016**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**